Argued December 3, reversed December 15, 1914, rehearing denied January 5, 1915.

## MARTIN v. THOMAS.

### (144 Pac. 684.)

**Fraudulent Conveyances—Evidence.**

1. Evidence *held* insufficient to warrant a finding that conveyances of certain property to a debtor's wife and sons were fraudulent and made with an intent to defeat plaintiff's claim.

> [As to transfers between husband and· wife in the aspect of fraudulent conveyances, see notes in 19 Am. St. Rep. 657; 20 Am. St. Rep. .715; 90 Am. St. Rep. 632.]

**Appeal and Error—Review—Equity Suit.**

2. An equity suit is tried *de novo* on appeal in the Supreme Court without regard to the conclusions of the court below as provided by Section 405, L. O. L.

**Trusts—Property Held in Trust—Liability for Trustee's Debts.**

3. Where a son paid the initial payment of $1,100 on a written contract to purchase certain land in the name of his mother and made thereafter monthly payments, the mother having paid no part of the price, both parties understanding that the son was the beneficial owner of the property and the contract was thereafter assigned to him and a quitclaim deed of the property made to him, the mother was a naked trustee for the son, and hence the property could not be reached by her creditors.

> [As to creation of trust in land by parol, see note in 115 Am. St. Rep. 774.]

From Lane.    LAWRENCE T. HARRIS, Judge.

Department 2. ᐱStatement by MR. JUSTICE RAMSEY.

This is a suit in equity by W. H. Martin against S. H. Thomas, Minnie E. Thomas, Robert A. Kletzing,

Lillie E. Kletzing, Ralph H. Kletzing, Louis M. Kletzing and Kletzing Brothers, copartners, to set aside certain conveyances, and to subject certain property to the payment of money due the plaintiff on two decrees, etc. In the court below there was a decree in favor of the plaintiff. The defendants appeal. The plaintiff also appeals from parts of the decree. The facts appear in the opinion.

REVERSED. REHEARING DENIED.

For appellants there was a brief over the names of *Mr. Fred E. Smith, Mr. J. W. Crawford* and *Mr. G. N. Parmenter,* with oral arguments by *Mr. Smith* and *Mr. Crawford.*

For respondent there was a brief and an oral argument by *Mr. H. E. Slattery.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On July 23, 1912, the plaintiff loaned to the defendants Robert A. Kletzing and his wife, Lillie E. Kletzing, $1,800 and took their promissory notes therefor, and to secure the payment thereof said defendants executed to the plaintiff an absolute deed of conveyance, conveying to him and his heirs 80 acres of timber land in Lane County. On April 4, 1913, the plaintiff commenced a suit in equity in the Circuit Court of Lane County against said two defendants to obtain a decree declaring said instrument to be a mortgage instead of a deed of conveyance, and for general relief. On April 23, 1913, said court rendered a decree declaring said instrument to be a mortgage to secure the payment of said sum of $1.800 and interest thereon, etc., and for the recovery from said two defendants of the sum of

$25.85 as costs and disbursements. The court did not, in said suit, render a decree of foreclosure of said mortgage. On July 25, 1913, the above-named plaintiff commenced another suit in equity in said Circuit Court against the defendants Robert A. Kletzing and Lillie E. Kletzing, to recover a decree against them for said sum of $1,800, and interest, attorney's fees, and costs and disbursements, and for the foreclosure of said mortgage and the sale of said 80 acres of timber land. In said last-named suit, the Circuit Court, on the 5th day of August, 1913, entered a decree in favor of the plaintiff and against said two defendants personally for $10.20 costs, $138.70 as attorney's fees, and for $1,986 upon said notes secured by said mortgage, and foreclosing said mortgage upon said 80 acres of timber land, and for the sale of said land according to law, to obtain funds to satisfy said several sums of money. Said land was sold, and the proceeds thereof were applied toward the payment of said sums of money and the costs of said sale, and after applying said proceeds toward the payment of the expenses of said sale and the amounts owing the plaintiff on said decree, there remained unpaid of said decree a deficiency of $573.18, which, with interest thereon at the rate of 10 per cent per annum from September 20, 1913, appears to be due and unpaid, from said two defendants to the plaintiff. After the sale of said timber land, said plaintiff caused a writ of execution to be issued out of said Circuit Court upon said deficiency decree for the purpose of collecting the same, and placed it in the hands of the sheriff of Lane County for the purpose of collecting said deficiency decree; but the sheriff was unable to find any property in said county, belonging to said defendants or either of them, subject to said writ of execution, and he made a return upon said writ to that

effect. Afterward, on or about December 20, 1913, this suit was commenced to set aside certain conveyances, etc., and to subject certain property, real and personal, which the defendants Ralph H. Kletzing and Louis M. Kletzing claim to own, to the payment of said deficiency decree and the other decree for $25.85, referred to *supra* and costs.

Robert A. Kletzing and Lillie E. Kletzing are husband and wife, and Ralph H. Kletzing and Louis M. Kletzing are their sons and only children. The sons are young and unmarried, and they and their parents reside together as one family. The complaint sets forth, in substance, most of the above-stated facts, and then alleges, in substance, *inter alia,* the following: That in August, 1912, the defendant Lillie E. Kletzing entered into a contract with the defendants S. H. Thomas and Minnie E. Thomas, agreeing to purchase from them for the consideration of $3,000 lot 9 in block 10 of Scott's Addition to Eugene, Lane County, Oregon, at which time she paid them the sum of $1,100 thereon and entered into possession thereof. That on April 25, 1913, said Lillie E. Kletzing and her husband, Robert A., assigned to Ralph H. Kletzing all their interest in said contract for the purchase of said lot 9 of block 10 of Scott's Addition to Eugene, and about the same time executed to him a quitclaim deed of their supposed interest in said lot, at which time the plaintiff alleges that the said Robert A. Kletzing and Lillie E. Kletzing paid to the defendants S. H. Thomas and Minnie E. Thomas the sum of $1,400 to apply upon the purchase price of said lot; that the assignment of the contract for said lot and the said quitclaim deed conveying the said lot to Ralph H. Kletzing are recorded on page 119 of book 101 of the deeds of records of Lane County,

74 Or.—14

Oregon. That the legal title to the above-described lot stands in the name of the said S. H. Thomas, subject to the equities of the said Kletzings therein, which they have by virtue of the said contract; that said Minnie E. Thomas is the wife of said S. H. Thomas, but has no interest in said lot, except her inchoate right of dower therein, and that said lot is in the possession of the said Robert A. and Lillie E. Kletzing. That the said Robert A. and Lillie E. Kletzing assigned the said contract to the said Ralph H. Kletzing and conveyed the said lot to him by said quitclaim deed with the intent to hinder, delay and defraud this plaintiff in collecting said mortgage and judgment, and it was so accepted by the said Ralph H. Kletzing; and that said assignment and conveyance were without consideration, and were accepted by said Ralph H. Kletzing with the intent to assist his said parents in hindering, delaying and defrauding the plaintiff of the said money due him. That the value of said lot was and is the sum of $3,500 upon the market, and that the purchase price thereof is all paid, except $1,500.

The complaint then alleges, in substance, that Robert A. Kletzing was engaged in business in Eugene, Oregon, under the name of R. A. Kletzing & Sons, and had a stock of goods of the value of $2,000, and that in the summer of 1913 he conveyed said stock of goods, including horses and wagons, to his sons, Ralph H. and Louis M. Kletzing, and that his said sons are continuing said business under the firm name of Kletzing Bros., and that said transfer was made and received without any consideration, and with the intent to hinder and delay this plaintiff in collecting his said mortgage, etc.; that Robert A. Kletzing and Lillie E. Kletzing were insolvent when said assignment and quitclaim deed were made, and when said transfer of said stock

of goods was made, and that they are now insolvent; that said conveyance of said lot was made while said suit for the foreclosure of said mortgage was pending, and that the transfer of said stock of goods was made while said mortgage debt was owing, etc.

Robert A. and Lillie E. Kletzing filed an answer to said complaint, and Ralph H. Kletzing filed an answer, and Ralph H. and Louis M. Kletzing, as partners, also, answered said complaint. These answers are lengthy, and we will not set out the substance of them further than to say that they denied most of the material allegations of the complaint and set up new matter. The replies put at issue the new matter of the answers. As stated *supra,* a decree was granted in favor of the plaintiff in part, and the defendants appeal. The plaintiff also appeals from a part of said decree.

1. The only evidence of any importance for the plaintiff, except exhibits, was that of the plaintiff himself. He resides in California, and was not present at the trial. His counsel stated that, if he were present, he would testify to certain facts, and counsel for the defendants admitted that he would swear to those statements, if he had been present. The supposed facts that his attorney said he would swear to, if present, were set out in full and treated as sworn evidence. Such statements were made without an opportunity of cross-examination. These statements of the plaintiff are to the effect that no part of the judgments (decrees) mentioned in the complaint has been paid. The remainder of his statements refers to conversations that he says that he had with Robert A. Kletzing and Lillie E. Kletzing and their two sons, concerning the ownership of the property on which they live and the grocery-store mentioned in the complaint, and concerning statements that he says they made to him in Eugene

in 1913. He says that both Robert A. Kletzing and his
wife, Lillie E. Kletzing, told him that they owned the
property where they resided, and that the store be-
longed to Robert A. Kletzing, and that their sons were
working in the store for wages. He says, also, that
Robert A. Kletzing told him that he had paid about
$1,500 on the place where he resided, and that he
bought it for $2,500, and that it was worth $3,500. He
says that Mrs. Kletzing told him that they had paid the
boys wages. He says Robert A. Kletzing told him that
he did the buying for the store and banked the money,
and that he first called the business "Kletzing & Sons"
and then changed it to "Kletzing Bros." He says,
also, that Ralph H. Kletzing and Louis M. Kletzing
told him that the store belonged to their father, Robert
A. Kletzing. He says, also, that Robert A. Kletzing
told him that he did not intend to pay him if he could
avoid it, and that Mrs. Kletzing and the two boys knew
Mr. Kletzing's attitude and heard him talk. He says
that Mr. Kletzing told him he was going to transfer the
store to the boys, and that he added, "Then we will see
how you will get your money." He says that Mr.
Kletzing told him that he was going to deed the house
and lot where they resided to the boys. He says, also,
that Mr. Kletzing told him, in anger, that he was going
to get his property in such a shape that the plaintiff
would not be able to get his money on these decrees,
and that Ralph H. Kletzing told the plaintiff that he
did not think that what his father owed the plaintiff
was a just debt, and that he would do what he could to
see that his father did not pay these judgments.

The foregoing is the substance of the statements
made by the plaintiff, or of what it was agreed he would
testify to, if present. According to this statement both
Robert A. Kletzing and Ralph H. Kletzing notified the

plaintiff that they did not think that his decrees repre-
sented just debts, and that they intended to do what
they could to see that Mr. Kletzing did not pay those
debts.   He says that Mr. Kletzing told him that he in-
tended to transfer the store to the boys, and said,
"Then we will see how you will get your money."   It
does not look reasonable that, if Mr. Kletzing and his
son Ralph had intended to defraud him, they would
have notified him of that fact.   Persons desiring to de-
fraud creditors, by conveying or covering up a debtor's
property, usually conceal their intentions.   They do
not notify the intended victim of their intentions and
plans.   The evidence indicates that Kletzing and his
son are intelligent men, and we can hardly believe that
when the plaintiff was endeavoring to get them to pay
him money, they told him that they intended to defraud
him, and indicated to him, in part, how they intended to
accomplish it.

Robert A., Lillie E., Ralph H. and Louis M. Kletzing
were sworn, and testified fully as to the facts of the
case, and as to the conversations that they respectively
had with the plaintiff.   They assert, in positive terms,
that they did not make any of the statements that he
attributes to them, as stated *supra.*   They admit that he
conversed with them to some extent concerning the
debt that Robert A. and Lillie E. Kletzing owed him
on the said foreclosure decree; but they deny saying
what he asserts that they said.

Robert A. Kletzing was a school-teacher in Iowa, and
he taught until he lost his hearing.   After he became
too deaf to teach, he went into another business there,
and he financially failed, losing all of his property.   He
went through bankruptcy before he came to Oregon.
After his failure in Iowa, he and his family removed to
Wyoming, and he took up a homestead claim about 50

miles from Cheyenne, and he resided on it three years and commuted it and paid the United States $1.25 per acre for it and obtained title thereto. Soon after obtaining title to said premises, he and his family came to Oregon and located at Eugene. His two sons, Ralph and Louis, before they left Iowa, ran a dairy business at Des Moines, on their own responsibility, although they were then under age, they having been emancipated by their parents. When the Kletzings went to Wyoming the parents had no property, but their sons had several head of horses, two cows and some other property. They sold this property as they had opportunity, and realized therefrom about $900. During the three years they were in Wyoming, the sons, Ralph and Louis, worked in Cheyenne and earned money, while their parents resided on the homestead. They appear, from the evidence, to be industrious young men. Robert A. and Lillie E. Kletzing could make no money during the three years that they resided on the homestead, and hence the sons furnished them money on which to live and to build a house and barn and fencing on the homestead. They furnished, also, $240 to pay for said land and the expense of making the proof of residence on and cultivation of the homestead, and funds to defray the expense of coming to Oregon. The evidence shows that the amount of money furnished by the sons to their parents, as stated *supra*, was approximately $2,200, and that it was furnished with the understanding and agreement that their father would repay them said money as soon as he should be able to do so. The money thus furnished was a loan. The facts stated *supra* are shown by the evidence of the defendants, and there is no testimony to the contrary or in any manner impeaching their evidence, and hence we accept it as true.

After they arrived in Eugene, Robert A. Kletzing exchanged his Wyoming homestead for 80 acres of timber land in Lane County that was encumbered with a mortgage of $900, a lot in Fairmount Addition to Eugene that was encumbered with a mortgage of $600, and a meat market in Eugene that was not encumbered. The Fairmount property was valued at $900 above the encumbrance, and the meat market was estimated to be worth $1,100. This exchange was effected with a man named Moxley. In order to pay Ralph Kletzing what he had advanced to his father, as stated *supra,* Robert A. Kletzing caused Moxley to convey to Ralph the Fairmount property, and to pay Louis M. for what he had advanced to his father, as stated *supra,* his father caused Moxley to make the bill of sale of the meat market to him. Ralph accepted the Fairmount property in payment of what he had loaned his father, and Louis accepted the meat market in payment of what his father owed him. Louis conducted the meat market awhile and then sold it. On August 17, 1912, Ralph H. Kletzing arranged with S. H. Thomas and wife for the purchase of lot 9, block 10, of Scott's Addition to Eugene for $3,000. He caused said contract to be made by said Thomas and wife, as parties of the first part, with his mother, Lillie E. Kletzing, as party of the second part. By the terms of said contract, $1,100, of the purchase price of said property was required to be paid at the date of the execution thereof, and $25 was to be paid monthly until the remaining $1,900 of the purchase price should be paid. The deed of conveyance is to be made when all of the purchase price shall have been paid.

The evidence shows that Ralph H. Kletzing, at the date of the execution of said contract, conveyed to said Thomas said Fairmount property, then owned by him,

in payment of $900 of the said purchase price of said lot 9 of block 10 of Scott's Addition, and at the same time paid to said Thomas, in cash, $200 on said purchase, making in all $1,100, paid by him at that time, of the purchase price of said property. The payments so made by him were accepted by said Thomas in full of the $1,100 payment that was required to be made on the purchase price of said property at that time. Said payment was made by Ralph as the beneficial owner of said property, and not as agent for his mother. After the execution of said contract, Ralph made all the monthly payments that fell due on said contract. His mother, Lillie E. Kletzing, never paid anything on the purchase price of said property. Ralph made all of said payments as the beneficial owner thereof. All of the Kletzings have resided upon said property as one family since it was purchased, as stated *supra*. The evidence shows that both Ralph and his mother regarded him as the beneficial owner of said property at all times, and that his mother had no beneficial interest therein. On April 25, 1912, Lillie E. Kletzing assigned her supposed interest in said contract for the purchase of said property to Ralph H. Kletzing, and, about the same time, she and her husband made to him a quitclaim deed for their supposed interest in said lot 9 of block 10 of Scott's Addition to Eugene. The plaintiff contends that said assignment and said quitclaim deed were made for the purpose of defrauding him; but we find that there is a strong preponderance of the evidence to the effect that they were made in good faith, and that Ralph H. Kletzing was the beneficial owner of said property at all times after the execution of the Thomas contract, that he paid all of the purchase price of said property that was paid, and that his mother was only a naked trustee thereof,

holding the same for him. The evidence shows that the grocery-store mentioned in the complaint was the property of Ralph H. Kletzing and Louis M. Kletzing. Neither Robert A. nor Lillie E. Kletzing ever had any interest therein.

Apart from some records that were put in evidence by the plaintiff, his case rests upon his own uncorroborated evidence. His evidence tends to make out his allegations of fraud, but it stands practically alone. The four defendants contradict him on every material point, and testify fully as to the facts. The plaintiff and these four witnesses are unimpeached, and we are unable to say that the plaintiff is entitled to any more credit than either of the four witnesses for the defense. And we cannot accept his evidence as true, when it is contradicted by four witnesses, each of whom being entitled to as much credit as he. The plaintiff and the defendants are interested in the result of the case, and each appears to be intelligent. Hence we are constrained to conclude that the plaintiff has failed to make out his case, and that there is a strong preponderance of the evidence in favor of the defendants. We find that Ralph H. Kletzing is the owner of said lot 9 in block 10 of Scott's Addition to Engene, Oregon, and that Ralph H. Kletzing and Louis M. Kletzing own the grocery-store and goods mentioned in the complaint, and that neither Robert A. nor Lillie E. Kletzing has any interest in said lot or said store.

2. Equity cases are tried in the court *de novo,* without regard to the conclusions of the court below: Section 405, L. O. L.

39 Cyc. 104 says:

"A resulting trust never arises out of a contract or agreement between the parties, but arises by implication of law from their acts and conduct apart

from any contract, the law implying a trust when the acts of the party to be charged as trustee have been such as are in honesty and fair dealing consistent only with a purpose to hold the property in trust, notwithstanding such party may never have agreed to the trust and may have really intended to resist it. Such a trust cannot be subsequently changed by oral declarations. A resulting trust may arise: (1) Where an estate is purchased in the name of one person, but the money or consideration is paid by another."

The same volume, on page 118, says:

"It is a well-settled rule of equity, in the absence of statutory provisions otherwise, that when property is paid for with the money or assets of one person, and the title thereto is taken in the name of another person, in the absence of circumstances showing a different intention or understanding, a resulting trust in the property arises in favor of the person whose money or assets are so used, or persons claiming under him, the controlling question being the ownership of the purchase money," etc.

1 Beach, Trusts and Trustees, Section 151, says:

"Where one person purchases an estate, paying the purchase money and takes the legal title in the name of another, who is a stranger, a resulting trust arises in favor of the purchaser. * * This comes of the well-established principle that the person who pays the purchase price of an estate takes the equitable title. As a principle of equity, this is not now open to controversy."

39 Cyc., page 108, says:

"As a general rule the statute of frauds or statute prohibiting parol trusts applies only to trusts expressly created or declared by the parties; and resulting trusts, since they arise by operation of law from facts attending the creation of the legal estate, are not affected by such statutes, and are valid notwithstanding the acts or transactions out of which they arise, rest in parol,

and parol evidence is admissible to establish them, and under some statutes such trusts are expressly excepted from the operation of the statute.''

In this state trusts arising by operation of law are excepted from our statute of frauds: Section 805, L. O. L.

3. The evidence shows that Ralph H. Kletzing paid in money and assets belonging to him the $1,100 when the written contract for the purchase of lot 9 of block 10 of Scott's Addition to Eugene was executed, and that he made thereafter the monthly payments that were made, and that Lillie E. Kletzing never paid anything toward the purchase price of said property, and both parties understood that the beneficial interest in said property was in him and not in his mother. We conclude that prior to the making of the said quitclaim deed and the assignment of said contract to Ralph H. Kletzing, his mother was a naked trustee of said property, and that the whole beneficial interest therein was vested in her son Ralph. As Lillie E. Kletzing was only a naked trustee of said real property for the benefit of her son Ralph, who was the sole beneficial owner thereof, it could not have been reached by her creditors and subjected to the payment of her debts while she so held it.

20 Cyc., pages 370, 371, says:

"If a debtor holds the bare legal title to property for another and has no beneficial interest therein, it cannot, in the absence of elements of estoppel, be reached and subjected to the payment of his debts, and therefore a conveyance thereof by him to the equitable owner or to a third person at the request of the equitable owner, is not fraudulent as against his creditors. * * It follows that where one who holds real or personal property under a parol trust makes a declaration of trust in accordance with the parol agreement, or con-

veys the property in accordance therewith, his creditors, in the absence of elements of estoppel, cannot attack the declaration or conveyance as fraudulent and subject the property to the satisfaction of their claims."

We hold that neither Robert A. Kletzing nor Lillie E. Kletzing ever owned any beneficial interest in said lot 9 of block 10 of Scott's Addition to Eugene, Oregon, or in the stock of goods mentioned in the complaint, and that the plaintiff has no cause of suit against either of the defendants, and that the decree of the court below should be reversed.

The decree of the court below is reversed and this suit is dismissed.

REVERSED. SUIT DISMISSED. REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.

MR. JUSTICE McNARY took no part in the consideration of this case.